LEWIS BROWN AND MARY A. BROWN HIS WIFE, *vs.* THOMAS ROWLES, ADM'R, WITH THE WILL ANNEXED, OF MARY STINCHCOMB.

WILL: RELEASE: HUSBAND AND WIFE: ESTOPPEL: ADMINISTRATION.—G. S. bequeathed his personal estate to his wife, M. S., for her life, and after her death, to their daughter, M. A. B., and appointed M. S. his executrix. M. S. administered on his estate, and by order of the Orphans' Court, was allowed to retain the personal estate as legatee for life at the appraisement. Subsequently M. S. died leaving a will, by which she gave all her property equally to six of her grand-children, four of whom were the children of M. A. B., who was appointed guardian to two of them who were infants. M. A. B. and her husband entered into a settlement with T. R., the adm'r c. t. a. of M. S., by which the amount due M. A. B., as legatee in remainder of G. S., was ascertained, and said amount was paid over to her, and she, together with her husband, executed and acknowledged before a magistrate a formal release, stating that said sum was "in full for all sums of money belonging to the said M. A. B., as legatee under the will of G. S." And she also as guardian for her said infant children, received from said administrator another sum of money, for which she, as such guardian, executed a like formal release bearing even date with the one executed by herself and her husband, attested by the same witness, and acknowledged at the same time, and before the same magistrate, in which the money so received by her, was stated to be "on account of the legacies bequeathed to the said (children) by the will of the said M. S." On a petition afterwards filed in the Orphans' Court by M. A. B. and her husband, seeking to have the administration account of T. R. re-stated and certain alleged errors therein corrected, so as to allow the said M. A. B. an additional sum which she, as legatee in remainder of G. S., claimed would be due her upon such correction, by the estate of M. S.; HELD:

1st. That these releases implied a settlement, whereby it was admitted, that the adm'r of M. S. had assets sufficient to pay considerable pecuniary legacies, an hypothesis wholly irreconcilable with the petitioner's claim.

2nd. That the validity of the joint release was unquestionably *pro tanto*, and the concurrence and privity of the husband with the wife, in executing the other, might be inferred from the coincidence of time, place and persons, and precluded him from denying the application of the funds to the purpose to which it was intended by the parties to be applied.

3rd. That predicated on these admissions, other legatees were paid by the adm'r, all of which, if the settlements were overturned, would be *devastavits*, for which the admr. and his sureties would be responsible on his bond, and therefore said releases must operate as estoppels *in pais*.

4th. That parties who have made settlements such as this, whereby the rights of third parties are acknowledged, and considerable sums paid over

Brown & Wife *vs*. Rowles, Adm'r of Stinchcomb.

to them, cannot be allowed to come in and overturn them afterwards, without the fullest proof of ignorance of facts, fraud, or imposition.

5th. That the two estates of G. S. and M. S. were improperly blended together by the admr. of the latter, but this irregularity was waived by the acts of the petitioners.

APPEAL from the Orphans' Court of Howard County :

This is an appeal from an order of the Orphans' Court of Howard County dismissing the appellants petition, upon the following state of case:

George Stinchcomb, father of the petitioner, Mrs. Mary Ann Brown, died in 1858, leaving a will, by the first item of which the testator manumitted all his negro slaves at the period of twelve months after his decease.  By the second item he devised and bequeathed to his wife, Mary Stinchcomb, all the rest and residue of his estate, real, personal and mixed, during her natural life, on condition, that if his two grand-daughters, Georgeanna Ridgely and Laura Virginia Ridgely should arrive at the age of eighteen years prior to the death of his said wife, she should dispose of so much of his real estate as would raise $1000, to pay each of his said grand-daughters $500.  By the third item he devised and bequeathed to his said daughter, the petitioner, Mary Ann Brown, after the death of his wife, all the estate, real, personal and mixed, in which he had previously given his wife a life-estate, charging the real estate with the payment of $500 to each of his said grand-daughters, in case they had not been paid during the life of his wife.  Lastly, he appointed his wife executrix of his will.

Mrs. Mary Stinchcomb took out letters testamentary, and administered on her husband's estate.  She passed one account as executrix, showing a balance due the estate on the 3rd January 1860, of $2353.09½; but previously, on the 21st December 1858, the Orphans' Court passed an order allowing her to take the personal estate of the deceased at the appraisement.

Mrs. Stinchcomb died in August 1860, leaving a will, by which she devised and bequeathed all her property to be

equally divided between her six grand-children, George-anna Ridgely and Laura V. Ridgely, children of her daughter Louisa, and George S. Norfolk, Louisa S. Norfolk, William W. H. Norfolk and Mary P. Norfolk, children of her daughter Mary, (the petitioner, who had been twice married.) Thomas Rowles, the present appellee, administered upon her estate. Before the filing of the petition in this case by Lewis B. Brown and Mary A. Brown, the administrator, Rowles, had passed four accounts. In his second account he is credited with a payment of $891.79, paid to Mrs. Brown; and Mrs. Brown and her husband executed a formal release to the said administrator, properly acknowledged, as *"in full for all sums of money belonging to said Mary A. Brown, as legatee under the will of George Stinch-comb, late of Howard County, which have been received by him."* In the same account the administrator is also credited with $590.55 paid as legacies under Mrs. Stinchcomb's will, to five of her six grand-children, being $118.11 to each of them; and Mrs. Brown herself, as guardian of two of her children, William H. and Louisa S. Norfolk, received for them the sum of $236.22, and duly executed a release for the same, as "on account of the legacies bequeathed the said William H. Norfolk and Louisa S. Norfolk by the will of the said Mary Stinchcomb." This release was executed by her as guardian, and acknowledged at the same time with the release executed by herself and her husband, and before the same magistrate, and was attested by the same witness. In his third account the said administrator is credited with $118.11, paid to Mrs. Brown for her son George Norfolk. Thus, beside the amount of $891.79, paid to Mrs. Brown on her own account, the administrator distributed to the six grand-children of Mary Stinchcomb, under the provisions of her will, the sum of $708.66.

The testimony of Mr. Sands shows, that Mr. W. H. G. Dorsey acted as counsel for both Mrs. Brown and Mr. Rowles, the administrator of Mrs. Stinchcomb, and it was agreed between Mr. Sands, counsel for the Ridgelys, and

Mr. Dorsey, that Rowles, who knew the property of George and Mary Stinchcomb, should go over the sale list of the property sold by the administrator of Mary Stinchcomb, and select such property as belonged to each respectively, and distribute the funds in hand accordingly; and the account making such distribution was passed on the application of Mr. Dorsey.

In addition to the payment made by the administrator of Mrs. Stinchcomb to Mrs. Brown, of $891.79, Mrs. Stinchcomb, in pursuance of a decree of the Circuit Court for Howard County, had paid out of the personal estate of George Stinchcomb, the sum of $500 to Georgeanna Ridgely to relieve the real estate devised in reversion to Mrs. Brown, and charged with that sum.

On the 23d January 1863, Mrs. Brown and her husband filed the petition out of which the present controversy arose. This petition prayed that the accounts of Thomas Rowles, as administrator, should be re-stated, so as to allow Mrs. Brown certain claims made in said petition, which claims are as follows:

1st. That Mrs. Stinchcomb had failed to charge herself, in the account passed by her as executrix of her husband, with two sums, $81.77 returned by her as sperate, and $67.50 returned as desperate, but said to have been realized by Mrs. Stinchcomb or her administrator.

2nd. That Mrs. Brown was entitled to receive from Thomas Rowles, the administrator of Mrs. Stinchcomb, the full amount of $2,353.09, the balance appearing due to the estate of George Stinchcomb, by the account passed by Mrs. Stinchcomb as executrix, with the addition of the said two sums of $81.77 and $67.50.

3d. That Mrs. Brown was further entitled to receive from the administrator of Mrs. Stinchcomb several sums, amounting to $800 and some interest, either paid or due to her estate, by Lewis B. Brown, one of the petitioners, and Thomas Jenkins, being for money lent to them by Mrs.

Stinchcomb. It is charged in the petition that Mrs. Stinchcomb made these loans out of moneys made by her, from the farm of her husband, during his life, being the proceeds of vegetables, fruits, butter and other articles, produced by the labor of the slaves of her said husband; and that, therefore, she should have returned such amounts as part of her husband's personal estate.

4th. That the sum of $883 belonging to the estate of George Stinchcomb, was deposited by Mrs. Stinchcomb in the private banking house of Josiah Lee & Co., in her own name, and lost by the failure of that house; that Mrs. Stinchcomb omitted to charge herself with that sum in her accounts; and that her estate is liable to Mrs. Brown in that amount, in addition to the other sums claimed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Cochran, J.

*R. J. Brent*, for the appellants:

The contest in the Court below, as presented on the petition and answer, related to the claims of Mary A. Brown, one of the appellants, as legatee in remainder, under the will of her father, George Stinchcomb.

By this will a life estate in his whole property was devised to Mary Stinchcomb, widow of the testator, subject to the payment out of the real estate, of two legacies of $500 each, to his grand-daughters, Georgeanna and Laura V. Ridgely, on their arrival at the ages of eighteen years, prior to the death of said life-tenant.

After the death of said Mary Stinchcomb, the whole of the testator's estate is devised to his daughter Mary A. Brown, one of the appellants, subject to raising the two legacies aforesaid, in case the widow did not in her life time pay off said legacies. Mary Stinchcomb obtained letters testamentary on said estate, and returned an inventory amounting to $1988.25.

Brown & Wife *vs.* Rowles, Adm'r of Stinchcomb.

To this inventory we are to add the cash and
  sperate debts,          -          -          - $1254.02

And we have a total of          -          - $3242.27

By her first account she states an admitted balance of
$2553.09½ as due to the testator's estate.

This balance is arrived at by adding to the appraised
value of the chattels ($1988.25) three items of cash received,
and by crediting the disbursements, for I exclude the $2500
debited as an additional inventory, returned on 3rd Jan-
uary 1860, because the same $2500 is credited in her ac-
count to the executrix as the appraisement of four manu-
mitted negroes.

The executrix being also tenant for life, obtained an or-
der on the 21st Dec. 1858, from the Court, by which she
was allowed to take the personal estate at the appraisement.

It was her duty to have sold all the property whose use
was its conversion into money, and invested it for the bene-
fit of the remainderman. *Evans, et al. vs. Iglehart et al.,*
6 *G. & J.* 171. *Wootten vs. Burch,* 2 *Md. Ch. Dec.,* 190.

It is material at this point to enquire what is the legal
effect of an agreement by the executrix, tenant for life, to
take the property at the appraisement. Her representative
now seeks to throw out of this appraisement certain arti-
cles, which he says were consumable in the use, and as
such belonged absolutely to the tenant for life, and in no
respects to the remainderman. In fact there were but
three items, amounting to $114, which were consumable
in the use, unless we include crops of corn, oats, &c. We
insist that the appraisement is conclusive, and the exe-
cutrix was estopped from impeaching or annulling her
own action, as taken under the sanction of the Court, and
also from showing depreciation in said property. If any
body could impeach such a purchase of the assets by an
executrix, at the appraised price, it would be the distribu-
tee in remainder, at her election, but it is final and conclu-
sive on the executrix, tenant for life.

It will be seen that the petitioners have by their petition elected to hold the estate of Mrs. Stinchcomb, the executrix, to the appraisement at which she took the property. *Burch vs. The State*, 4 *G. & J.*, 444.

It is clearly implied from her agreement to take the whole at the appraisement, that she admitted that to be the value of such of the chattels as were legally limited in remainder.

The result is, that Mrs. Stinchcomb became debtor for the balance found to be due on her first account, which was also her final account, and the title to the property appraised is thereby cast on her. *Burch vs. The State*, 4 *G. & J.*, 444.

By the settlement of her account, she being executrix and tenant for life, the balance due by her on that account ($2353.09) is adjudged by law to remain in her hands as legatee for life. *Boyd vs. Boyd*, 6 *G. & J.*, 25.

By the attempt now made to throw out a portion of the articles taken by Mrs. Stinchcomb at the appraisement, it would, if successful, deprive us of the benefit of having the property in the inventory sold, as it might have been at the time, and by which means it might have realized for the articles belonging to the remainderman much more than the whole amount of the appraisement.

We therefore maintain, that it is now too late to reject that appraisement in whole or in part, and her estate must stand by her election to become debtor to her husband's distributees for the whole appraisement. And on this balance we are entitled to interest from her death on the 4th September 1860.

Mrs. Brown being admitted to have been a *feme covert*, it follows, that her release, of what was due to her on the 14th August 1861, was null and void, except as a receipt for money paid. *Lymon vs. Clark*, 9 *Mass.*, 226. *Rich vs. Lord*, 18 *Pick.*, 325. *Jackson vs. Stackhouse*, 1 *Cowen*, 125. 5 *Bac. Abr.*, "*Release.*" *Learned vs. Bellows*, 8 *Vermont*, 84. *Fr's & Mech. Bk. vs. Wayman, et al.*, 5 *Gill*, 355.

Nor is she bound by the parol agreement and alleged distribution, as set up in the testimony of Mr. Sands, even if the proof was satisfactory, which we deny. And see on this, *Hanson & Wife vs. Worthington, et al.*, 12 *Md. Rep.*, 418. *Scott vs. Fox*, 14 *Md. Rep.*, 394, 395 and 397.

On this hypothesis the administrator of Mrs. Stinchcomb must pay her debts, before he pays her legacies.

If this view is adopted, Mrs. Brown was entitled to an allowance of her claim as creditor.

It appears that old Mr. and Mrs. Stinchcomb acted as a great many married couples do in the country. She managed and sold the butter, fruit, vegetables and poultry, raised by the labor of her husband's servants, and by her personal care and supervision. Being so zealous in this cause, and so bent on making money, she often stinted the family as her husband complained, and went on hoarding as her own the proceeds of these sales. Being a strong-minded woman, she came to claim it as her own money, and on one occasion, as she stated to Isaac C. Anderson, she hid her money in her husband's own house, in the lye-hopper, and finally carried it away to Mr. Anderson for safe-keeping, evidently fearing she might have it taken from her in his own house.

It is true that it is proved that persons borrowed the money from her, and gave their notes to her out of the presence of her husband and that he said it was "her own money."

But Mr. Anderson proves that he said, "when he borrowed from her he was never done paying it back."

We submit that the whole evidence proves only that the husband was infirm in health, and unable to cope with his more high-mettled mate, who appropriated as hers all the proceeds of these sales. Such relations in business matters often exist in the country, and many a prudent husband often makes his wife his cashier, and allows her to handle and even invest his money as hers.

From such loose acts *in pais* there is no intention to create a separate estate, especially where no such estate is

recognised in the will of the husband, or by any other written act on his part. While no technical words are necessary there must be a clear and distinct purpose on the part of the husband to give her a separate title. Our case is wanting in all such elements, according to the best and latest authorities. *Hutchins, et al., vs. Dixon*, 11 *Md. Rep.*, 30. *Turton vs. Turton*, 6 *Md. Rep.*, 380. *Mews vs. Mews*, 21 *Eng. Law & Eq. Rep.*, 556. This last case fully settles the whole law, and shows the insufficiency of all the evidence here relied on. See, also, 12 *Md. Rep.*, 121 and 310. 14 *Md. Rep.*, 265.

Anderson also proves that she said she had $3000 in money, which would seem to be contrary to the limitation prescribed in the Act of 1842, ch. 193, sec. 8. The attempt of the respondent to set up an agreement between the husband and wife to the effect that he would will his property to his daughter Mary A. Brown and her children, and she was to give her property to Mrs. Ridgely's children, fails: 1. Because it is in parol. 2. Because it contemplated only a disposition by will, and that was no contract, but revocable. 3. Neither party carried out such an understanding by their will.

We therefore contend, that in any point of view Mrs. Brown is entitled to be paid to the extent of the assets in the hands of Mrs. Stinchcomb's administrator.

*Thomas Donaldson* and *George W. Sands*, for the appellee:

George Stinchcomb by his will gave to Mrs. Stinchcomb a life estate in all his property real and personal, charging the real estate with certain legacies; and after her death he devised and bequeathed all his real and personal estate to Mrs. Brown the petitioner. Under this provision Mrs. Stinchcomb was entitled absolutely to all such articles as would be consumed in the use. These of course must be deducted from the balance of $2353.09. As to the other personal property, she was entitled to the use of the specific articles themselves, during her life, and she was not

answerable for the loss by death of any of the stock, nor for the depreciation by time, use and natural decay, of any of the articles.     An examination of the inventory will show how much should be deducted for those articles in which she claimed an absolute right under the will.   It is also claimed on the part of the appellee, that the horses included in the inventory became the absolute property of Mrs. Stinchcomb, under the will of her husband.   These were valued in the inventory at $425.     *Wootten vs. Birch,* 2 *Md. Ch. Dec.*, 199.   The manuscript of this case, as appears from the inventory, shows that a cow and heifer were to be included in the description of property consumable in use.

But Mrs. Stinchcomb, after passing her account, paid the sum of $500 to Georgeanna Ridgely, for her legacy under George Stinchcomb's will, the payment of which was charged on the real estate left for life to Mrs. Stinchcomb, and after her death, to Mrs. Brown.   Instead of selling part of the land, as authorised to do by the will, Mrs. Stinchcomb paid it, by authority of a decree in equity, out of the personal estate.   This payment then, of which Mrs. Brown received the full benefit, must also be deducted from the said balance of $2353.09, before paying Mrs. Brown.

Thus, if Mrs. Stinchcomb was entitled absolutely to the horses, Mrs. Brown who received $891.99, was largely overpaid by the administrator of Mrs. Stinchcomb, the present appellee, even without making any allowance for loss and depreciation of the other personal property.

But, at the time of passing the account, it was agreed by counsel, representing Mrs. Brown and the appellee, that the appellee should go over the list of the personal property remaining at the death of Mrs. Stinchcomb, and determine what part belonged to the estate of George Stinchcomb, he being acquainted with the property; he did so, and the account by which Mrs. Brown was allowed $891.79, was made out in accordance with his report, consented to by all parties, and presented to the court by Mrs. Brown's own counsel.   In this account Mrs. Brown is treated with great

liberality, and it is evident that the horses were not treated as if the absolute property were in Mrs. Stinchcomb; but the loss and depreciation on the specific articles of personal property, including the horses, amounted to about $130.

It is contended that this settlement was not only very liberal to Mrs. Brown, but that she is bound by the agreement of her counsel, and by the release executed by herself and husband, and that this court will presume that the action of the Orphans' Court was taken on good grounds. The point made by the appellants, that at the date of the said release, the appellee, Rowles, had not received more money belonging to Mrs. Brown than the sum of $891.79, is entirely inconsistent with her present claims; for, on the very same day, Mrs. Brown received from the appellee the sum of $236.22, on account of her own two children, as legatees under her mother's will, and she now claims that very sum as her own; and by the same account allowing those sums, $354.33 was allowed to other distributees, some of them children of Mrs. Brown, which last sum is also now claimed by Mrs. Brown.

The fact that the Orphans' Court by its order of December 21st, 1858, allowed Mrs. Stinchcomb to take the personal estate of her husband at the appraisement, cannot have the effect of obliging her estate to pay to Mrs. Brown the whole balance of $2353.09, as claimed by the appellants. If Mrs. Stinchcomb was entitled absolutely to the consumable part of the property, of which there can be no doubt, this order of the Orphans' Court could not deprive her of that part; such could not have been the intention of the order; nor could it make her responsible for the losses and depreciation of the rest. She was in law entitled under her husband's will to the possession of the specific property, to use during her life, and an appraisement was necessary to ascertain for what she must be accountable to the party entitled in reversion; and without any order of the Orphans' Court, she would have held the personal property, to which she was not absolutely entitled, at the

appraisement, subject, of course, to proper abatements. *Evans vs. Iglehart*, 6 *G. & J.*, 171, 177. *Wootten vs. Burch*, 2 *Md. Ch. Dec.*, 199.

Mrs. Brown claims as part of the capital of her father's estate, sums amounting to about $800, which she charges that her mother made from her father's farm and garden, and wrongfully retained, instead of returning the same as part of his estate. Part of this was $300, which Mrs. Stinchcomb lent to Lewis B. Brown, the petitioner himself. The petition and answer assumed, that the further sum of $883 deposited by Mrs. Stinchcomb with Lee & Co., was on account of sums thus received by her and not returned in her account as executrix, and therefore Mrs. Brown claims that sum also; but we will show under the next head that this is a mistake. The sums lent by Mrs. Stinchcomb to Jenkins and Brown, and amounting to $800, were all that appear to have been received by her during her husband's life on her own account. If she had more, it does not appear what had become of it. By the Act of 1842, chapter 293, she was entitled to the sum of $1000, earned by her skill, industry and personal labor, and "to the fruits, increase and profits thereof, to her sole and separate use, with power as a *feme sole* to invest and reinvest and sell and dispose of the same." Code, p. 559, sec. 1, Art. 79. The testimony of Mr. Jenkins shows, that she begun her accumulation before the year 1853, and that she was then lending it on interest; and the testimony of Mr. Jenkins, Dr. Owings and Mr. Anderson, prove that she continued to invest and reinvest up to the date of her death. Therefore, under the provisions of that law, the amount thus secured to her separate use might well have been much more than $1000.

It is denied by Mrs. Brown that the money was earned by her mother's own skill, industry or labor; but Dr. Owings and the petitioner's own witnesses, Mary Norfolk and Isaac C. Anderson, concur in establishing the point. She had charge of the dairy, superintended the work there, and

herself assisted; had charge of the poultry; she superintended the working of the garden, and the gathering of the fruits and vegetables; and she herself regularly took the produce of dairy, garden and orchard to market, and disposed of it. Indeed, all the testimony shews that she was a woman of remarkable energy and industry.

But even if Mrs. Stinchcomb were not entitled under the Act of 1842, ch. 293, to what she had earned by so much exertion, or if it should appear that the amounts accumulated by her exceeded what is allowed by the Act; yet the appellee insists, that said amounts were so accumulated by the express consent of her husband, were given by him to her for her own separate use, and were in the nature of a settlement made by him upon her for her sole and separate use, which settlement was perfectly valid as against the petitioners and all the legal representatives of her husband.

It is clear that Mr. Stinchcomb, himself, considered these accumulations as the absolute property of his wife, and meant to confer them upon her as such; and nothing could be more fair and reasonable, they being the proceeds of her own industry, and of the labor of some of those very servants which she had brought him. No particular words are necessary to create a settlement, so that the intention is made out. 2 *Story's Eq.*, *p.* 8, *sec.* 1375. *Slanning vs. Style*, 3 *P. W.*, 337. *George vs. Spencer*, 2 *Md. Ch. Dec.*, 353. 2 *Roper, H. & W.*, 138. 2 *Bright, H. & W.*, 298. *Hutchins vs. Dixon*, 11 *Md. Rep.*, 37. *Bridges & Woods vs. McKenna*, 14 *Md. Rep.*, 265. *Carroll vs. Lee*, 3 *G. & J.*, 504, 508. *Glancy, H. W.*, 272.

Thus it appears, not only that Mrs. Stinchcomb received these sums for her sole and separate use by the express consent of her husband, but the two made an agreement in regard to the disposition of their respective estates, hers consisting entirely of what she had accumulated in the manner already shewn. The wills of the two, both of which are set forth in the Record, confirm this testimony. Mr. Stinchcomb leaves all his property, real and

personal, after the death of his wife, to Mrs. Brown, charged only with the payment of $500 each to the two children of his deceased daughter, Louisa Ridgely; and Mrs. Stinchcomb divides her estate equally among her six grand-children, being the two Ridgelys, and the four children of Mrs. Brown. Thus Mrs. Brown and her children got almost the whole of both estates, and yet Mrs. Brown now seeks to deprive her two nieces, Georgeanna and Laura Ridgely, of all participation in either estate beyond the sum of $500 each, charged by George Stinchcomb on the real estate.

The petition charged that $883, belonging to the estate of George Stinchcomb, was deposited in the Banking House of Josiah Lee & Co. by the executrix, Mrs. Stinchcomb, in her own name, and that the same was not returned by her as part of the estate of her husband; and though this sum was entirely lost by the failure of Josiah Lee & Co., Mrs. Brown claims that it is due to her by Mrs. Stinchcomb's estate. The answer of the appellee admits the deposit and the loss of the amount, but denies that any part of it belonged to the estate of George Stinchcomb, and asserts that it was part of the separate estate of Mrs. Stinchcomb. Both the petition and answer were in error. This sum of $883 was returned to the Orphans' Court by Mrs. Stinchcomb, as part of her husband's personal estate, and she charged herself with it as part of the balance of $2,353.09, due his estate by her first account; so that in settling with Mrs. Brown on the basis adopted by the agreement of counsel, in August 1861, she had the benefit of this sum of $883,—although it was entirely lost to Mrs. Stinchcomb's estate and to her legatees. Mrs. Stinchcomb's account charges herself with $1,000 deposited in the Union Bank by her husband, and Mr. Mickle's testimony shows, that it was that very $1,000, withdrawn from the Union Bank, which the executrix deposited with Josiah Lee & Co.

The legatees of Mrs. Stinchcomb lose the $883, (part of said $1,000,) but Mrs. Brown has been charged with no part of the loss.

The appellee contends that, for this very reason, the petitioner, Mrs. Brown, has received already from her mother's estate far more than she was entitled to, and that Mrs. Stinchcomb's estate was not properly chargeable with the loss caused by the failure of the Bank. Mrs. Stinchcomb being entitled to a life estate in said sum, it was properly deposited in her own name, although Mrs. Brown might have applied to the Court for her to give bond for the payment of the amount at her death. Having a right to deposit it in her own name, and not even mingling it with any other funds, either of her own or any one else, she was not responsible for its loss. *Rowth vs. Howell*, 3 *Ves., Jr.*, 566. *Adams vs. Claxton*, 6 *Ves.* 226. 2 *Story, Eq.*, sec. 1269.

*R. J. Brent*, in reply:

The administrator is to be charged with the sperate debts as assets. *Leighman vs. Marshall's Admr.*, 17 *Md.*, 571. Crops of corn, as well as tobacco, are assets in the hands of the administrator. *Evans vs. Iglehart*, 6 *G. & J.*, 184. In this case, the carriage and horses are expressly given to the widow, the tenant for life; but it does not appear in the printed volume of Reports. Growing crops are assets, except *clover, hay, &c.;* perishable articles, such as *wear out* in the use, are not—as articles *consumable* in the use—the absolute property of the tenant for life, as held by Chancellor Johnson, in 2 *Md. Ch. Dec.*, 190. The confusion of property, by the life-tenant coming in and taking the whole at the valuation, makes her chargeable with what might otherwise have been absolutely hers, for the benefit of the remainderman. As to her rights under the acts of 1853 and 1842, see *Schindle vs. Schindle*, 12 *Md.*, 108; and *Bridges and Woods, vs. McKenna*, 14 *Md.*, 266. In none of these cases has the husband the *jus disponendi*. See case of *Norris vs. Lantz & Hyde*, 18 *Md.*, 269. 1st

4     v. 21

*Md. Code, p.* 325, *secs.* 2, 11. In the case in 18 *Md.*, 463, a judgment by default by the attorney of a married woman was set aside.

Bowie, C. J., delivered the opinion of this Court:

As the legal effect of the settlement and releases relied on by the appellees lies at the threshold of this case, and in the opinion of this Court is conclusive, an examination of the circumstances attending their execution is necessary to ascertain their character and operation.

Mary Brown, one of the appellants, had by a previous marriage, certain children named Norfolk, who were legatees under the will of Mary Stinchcomb, her mother, and the widow and executrix of George Stinchcomb; of which children, Mary Brown was guardian. She was also legatee in remainder under the will of George Stinchcomb, of all the property bequeathed to Mary Stinchcomb for life, and at the time of the settlement and releases referred to, was the wife of Lewis B. Brown, the other appellant. After the death of her mother, Mary Stinchcomb, the appellants authorised the appellee to sell all the *personal property belonging to the estate of George Stinchcomb,* by a writing under their hands and seals, dated 25th of September 1860. Which paper, it is proved, was in the handwriting of W. H. G. Dorsey, Esq., attorney at law. It is shewn that Mr. Dorsey acted as counsel for Mrs. Brown and the appellees; that after the sale, the funds being then in the hands of the appellee, it was agreed by Mr. Dorsey and Mr. Sands, attorneys for the Ridgelys, other legatees of Mary Stinchcomb, that Mr. Rowles, (the appellee,) knowing the property of George and Mary Stinchcomb, should go over the sale-list and select such property as belonged to Mr. George Stinchcomb, determine the amount belonging to each of the parties, and distribute the funds in hand accordingly. "The understanding between Dorsey and Sands was, that the whole matter should be settled upon the basis of that agreement." Mr. Rowles brought his statement of the division of the

property he had made before the attorneys, and they agreed to the correctness of it.

The appellants, by their joint deed of release, acting as husband and wife, acknowledged the receipt of eight hundred and ninety-one dollars and seventy-nine cents, of the appellee, in full for all sums of money belonging to the said Mary A. Brown, as legatee under the will of George Stinchcomb, late of Howard County, deceased, which have been received by him. This deed was attested, executed, and acknowledged, before a justice of the peace of Baltimore city, on the 14th of August 1861.

On the same day, Mary A. Brown, by her several deed of release, as guardian of Wm. W. H. Norfolk and Louisa Norfolk, executed and acknowledged before the same justice, admitted the receipt of two hundred and thirty-six dollars and twenty-two cents, on account of legacies bequeathed to the said William and Louisa Norfolk by the will of Mary Stinchcomb.

These papers are not mere receipts; they are drawn with all the formality of deeds, executed, attested and acknowledged as such. They profess to release the appellee of and from all and every action, suit, claim or demand which could or might possibly be brought against him, for or on account of said sum of money, or the payment thereof, &c. Executed on the same day, attested by the same witness, and acknowledged before the same justice, the one, in the joint names and character of husband and wife, for a legacy, or part of a legacy, under George Stinchcomb's will, and the other by the wife alone, in the character of guardian of her children, for part of a legacy under Mary Stinchcomb's will, they imply a settlement whereby it was admitted that Mary Stinchcomb's administrator had assets sufficient to pay considerable pecuniary legacies; an hypothesis wholly irreconcilable with the appellant's present theory.

" When the law ascribes to one instrument a conclusive, and to another a *prima facie* character, we must presume that parties using either, intend it to operate according to

its legal effect. A release will discharge a debt when a receipt will not. 'Persons may settle in good faith, under an impression that the amount paid is all that is due. But it sometimes happens that mistakes occur, and to enable parties to correct them, the law has declared that mere receipts are not conclusive." *Jones vs. Ricketts*, 7 *Md. Rep.*, 117. It is immaterial in this aspect of the case, whether these releases were only *pro tanto* or in full, or whether that executed by Mary Brown alone, as guardian, was operative as such. The validity of the joint release is unquestionably *pro tanto;* the concurrence and privity of the husband with the wife in executing the second, may be inferred from the coincidence of time, place, and persons, and precludes him from denying the application of the funds to the purpose to which it was intended by the parties to be applied. Predicated on these admissions and facts there were payments, not only to the appellant, Mary, as guardian of the Norfolks, but to the Ridgelys, other legatees of the same testatrix. If this settlement is overturned, all those payments were *"devastavits,"* for which the appellee and his securities would be responsible on his bond. These releases must therefore operate as *estoppels in pais.*

"As a general rule, a party will be precluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." 1 *Greenleaf's Ev.*, secs. 207, 208. *McClellan & Wife, vs. Kennedy*, 8 *Md. Rep.*, 253.

This court could not allow parties who had made settlements such as this, whereby the rights of third persons were acknowledged, and considerable sums paid over to them, to come in and overturn them afterwards, without the fullest proof of ignorance of facts, fraud or imposition. In this instance, there is no allegation or pretence of ignorance of all or any of the facts, relative to the two estates; the parties appellant, were *"sui juris"* and not *"inops*

*concilii*," and cannot now be permitted to repudiate their own deed. "A settled account will be deemed conclusive between the parties, unless some fraud, mistake, omission or inaccuracy is shown. For it would be most mischievous to allow settled accounts between the parties, especially where vouchers have been delivered up or destroyed, to be unravelled, unless for urgent reasons, and under circumstances of plain error which ought to be corrected. 1 *Story's Eq.*, sec. 527.

The appellants suffered the appellee to administer the two estates as one. As administrator of the deceased executor, he should regularly and legally have first passed such an account as the deceased executrix of George Stinchcomb should have done, showing the condition of the first testator's estate at the time of her decease, and if any balance was due that estate from the deceased executrix, that balance should have been shown. But the appellants, waiving the character of a creditor, assumed that of legatee, and in writing authorised the appellee to sell the specific articles remaining on the estate of George Stinchcomb, and afterwards, by their counsel, consented to a distribution of the proceeds between the appellant and other legatees; the appellee obtaining credits in the same account for legacies paid under the will of George Stinchcomb and legacies paid under the will of Mary Stinchcomb. No ignorance of the facts is alleged by the appellants. It is too late to rely upon ignorance of the law, if it would have availed at any time.

These considerations precluding the opening of the accounts, which have been passed under such circumstances, it is unnecessary to decide the points which have been raised in this court, upon the presumption that they might be reformed and restated.

> *Order of the Orphans' Court affirmed*
> *with costs to the appellee.*

(Decided Feb'y 5th, 1864.)